**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

KAREN S.,

                                                              Plaintiff,

                    v.
                                                                                        No. 3:20-CV-960
COMMISSIONER OF SOCIAL SECURITY,                                (CFH)


                                                              Defendant.
_____

**APPEARANCES:**                                    **OF COUNSEL:**

Lachman, Gorton Law Firm                     PETER A. GORTON, ESQ.
P.O. Box 89
1500 East Main Street
Endicott, New York 13761
Attorneys for plaintiff

Social Security Administration              DANIEL STICE TARABELLI, ESQ.
J.F.K. Federal Building,
15 New Sudbury Street, Rm. 625
Boston, Massachusetts 02203
Attorneys for defendant

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**


### MEMORANDUM-DECISION AND ORDER[1]

        Karen S.[2] ("plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking

review of a decision by the Commissioner of Social Security ("the Commissioner")

_____

[1] Parties consented to direct review of this matter by a Magistrate Judge pursuant to 28 U.S.C. §
636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 72.2(b), and General Order 18.  See Dkt. No. 7.
[2] In accordance with guidance from the Committee on Court Administration and Case Management of the
Judicial Conference of the United States, which was adopted by the Northern District of New York in 2018
to better protect personal and medical information of non-governmental parties, this Memorandum-
Decision and Order will identify plaintiff's last name by initial only.

denying her application for disability insurance benefits.  See Dkt. No. 1 ("Compl."). Plaintiff moves for reversal and remand for the determination of benefits.  See Dkt. No. 11.  The Commissioner cross-moves for judgment on the pleadings.  See Dkt. No. 14. Plaintiff replies.  See Dkt. No. 15-1.  The Commissioner also files a Notice of Supplemental Authority, to which plaintiff responds.  See Dkt. Nos. 17-1, 19, 20-1.  For the following reasons, plaintiff's motion for judgment on the pleadings is granted, the Commissioner's cross-motion for judgment on the pleadings is denied, and the matter is reversed and remanded for further proceedings.

## I. Background

On February 15, 2017, plaintiff filed a Title II application for disability insurance benefits.  See T. at 100.[3]  Plaintiff alleged a disability onset date of November 27, 2015. See id. at 189.  The Social Security Administration ("SSA") denied plaintiff's claim on March 22, 2017.  See id. at 115-18.  Plaintiff requested a hearing, see id. at 125, and a hearing was held on June 6, 2019, before Administrative Law Judge ("ALJ") Lawrence Levey.  See id. at 52-99.  On June 19, 2019, the ALJ issued an unfavorable decision. See id. at 34-45.  On June 23, 2020, the Appeals Council denied plaintiff's request for review.  See id. at 1-5.  Plaintiff commenced this action on August 20, 2020.  See Compl.

---

[3] "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner. See Dkt. No. 10.  Citations to the administrative transcript refer to the pagination in the bottom, right-hand corner of the page, not the pagination generated by CM/ECF.

## II. Legal Standards

### A. Standard of Review

In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1388(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied or it was not supported by substantial evidence. See Johnson v. Bowen, 817 F.2d 983, 985-86 (2d Cir. 1987); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (per curiam) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted)). The substantial evidence standard is "a very deferential standard of review . . . . [This] means once an ALJ finds facts, we can reject [them] only if a reasonable factfinder would have to conclude otherwise." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotations marks, citation, and emphasis omitted). Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion is arguably supported by substantial evidence. See Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson, 817 F.2d at 986). However, if the correct legal standards were applied and the ALJ's finding is supported by substantial evidence, such finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent

3

analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted).

### B. Determination of Disability

"Every individual who is under a disability shall be entitled to a disability . . . benefit . . . ." 42 U.S.C. § 423(a)(1)(E).  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" Id. § 423(d)(1)(A).  A medically-determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience. See id. § 423(d)(2)(A). Such an impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques." Id. § 423(d)(3).  Additionally, the severity of the impairment is "based on objective medical facts, diagnoses[,] or medical opinions inferable from [the] facts, subjective complaints of pain or disability, and educational background, age, and work experience." Ventura v. Barnhart, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983)).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.
>
> If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which

significantly limits his [or her] physical or mental ability to do
basic work activities.

If the claimant suffers such an impairment, the third inquiry is
whether, based solely on medical evidence, the claimant has
an impairment which is listed in Appendix 1 of the
regulations.  If the claimant has such an impairment, the
[Commissioner] will consider him [or her] disabled without
considering vocational factors such as age, education, and
work experience; the [Commissioner] presumes that a
claimant who is afflicted with a "listed" impairment is unable
to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment,
the fourth inquiry is whether, despite the claimant's severe
impairment, he [or she] has the residual functional capacity
to perform his [or her] past work.

Finally, if the claimant is unable to perform his [or her] past
work, the [Commissioner] then determines whether there is
other work which the claimant could perform.

Berry, 675 F.2d at 467 (spacing added).  "If at any step a finding of disability or non-

disability can be made, the SSA will not review the claim further."  Barnhart v. Thomas,

540 U.S. 20, 24 (2003).  The plaintiff bears the initial burden of proof to establish each

of the first four steps.  See DeChirico v. Callahan, 134 F.3d 1177, 1180 (2d Cir. 1998)

(citing Berry, 675 F.2d at 467).  If the inquiry progresses to the fifth step, the burden

shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful

employment somewhere.  Id. (citing Berry, 675 F.2d at 467).


### III. The ALJ's Decision

Applying the five-step disability sequential evaluation, the ALJ first determined

that plaintiff had not engaged in substantial gainful activity "during the period from her

5

alleged onset date of November 27, 2015 through her date last insured of March 31,

2017[.]" T. at 36.  At step two, the ALJ found that plaintiff had the following severe

impairments: "left knee degenerative joint disease, chondromalacia, and tendinitis;

cervical degenerative disc disease, headaches, obesity, diabetes, vertigo, affective

disorder, and anxiety disorder[.]"  Id.  At step three, the ALJ determined that plaintiff did

not have an impairment or combination of impairments that met or medically equaled

the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix

1.  See id. at 37.  Before reaching step four, the ALJ concluded that plaintiff retained the

residual functional capacity ("RFC") to perform light work as defined in 20 CFR

404.1567(c) except

> [she] could only occasionally utilize her left lower extremity for pushing,
> pulling, and operation of foot controls.  The claimant could only
> occasionally stoop and climb ramps and stairs.  The claimant could not
> climb ladders, ropes, and scaffolds, and could not balance on uneven
> surfaces, kneel, crouch, and crawl.  The claimant could engage in rotation,
> flexion, and extension of the neck independently of the torso on no more
> than an occasional basis.  The claimant could engage in overhead
> reaching on no more than an occasional basis.  The claimant had to avoid
> concentrated exposure to greater than moderate noise level.  The
> claimant had to avoid concentrated exposure to light greater than that
> found in a typical office environment.  The claimant was required to have
> no work related exposure to unprotected heights and hazardous
> machinery.  The claimant was limited to the performance of simple,
> routine, and repetitive tasks in a work environment free of fast paced
> production requirements, involving only simple work related decisions and
> with few, if any, changes in the workplace.

Id. at 39.  At step four, the ALJ determined that plaintiff was unable to perform

relevant past work.  See id. at 43.  At step five, considering the plaintiff's age,

education, work experience, and RFC, the ALJ concluded that there were jobs

that existed in significant numbers in the national economy that plaintiff could

perform.  See id. at 43-44.  Thus, the ALJ determined that plaintiff "was not under

a disability, as defined in the Social Security Act, at any time from November 27, 2015, the alleged onset date, through March 31, 2017, the date last insured[.]" Id. at 45.

## IV. Arguments[4]

Plaintiff argues that the ALJ improperly weighed the opinion of her treating physician Kevin Hastings, D.O., and that the ALJ's step-five determination is not supported by substantial evidence. See Dkt. No. 11 at 16, 20-21. Plaintiff also argues that the Appeals Council erred in failing to provide "good reasons" for denying review of the ALJ's decision. Id. at 19, 20-21. The Commissioner argues that (1) the ALJ appropriately weighed Dr. Hastings' opinion, (2) plaintiff's RFC is based on substantial evidence, and (3) the Appeals Council is not required to articulate its reasoning for denying review. See Dkt. No. 14 at 4-18.

## V. Discussion

### A. Relevant Medical Evidence and Procedural Background

Plaintiff first saw Dr. Hastings on January 6, 2016, following a November 27, 2015, car accident. See T. at 510-14. Plaintiff then met with Dr. Hastings two- to three-times a month until and through her date last insured. See id. at 1093-97. At her initial visit, plaintiff complained of neck, left shoulder, and left knee pain. See id. at 510.

---

[4] The Court's citations to the parties' briefs refer to the pagination generated by CM/ECF in the pages' headers.

Throughout Dr. Hastings' treatment record, plaintiff reported dizziness, headaches, depression, stress, and sleeping problems.  See id. at 511, 532, 536, 540, 556, 576, 584, 608, 1087.  Objectively, plaintiff appeared to be in no apparent distress, walked with a normal gait, and had intact motor strength and coordination.  See id. at 512, 516, 520, 524, 528, 536, 540, 556, 564, 584, 596, 620, 632, 1094.  Plaintiff had tenderness across her spine and shoulders, decreased range of motion in the cervical spine but full range of motion in the thoracic and lumbar spine, and full range of motion with discomfort and tenderness of her left knee.  See id. at 513, 516-17, 521, 528-29, 532-33, 536-37, 540-41, 560-61, 572,  576-77, 596, 609, 624-25, 632-33, 637-38, 1094-95.  Plaintiff had muscle tension headaches with tenderness in her head and neck and restricted range of motion on the right side of her head.  See id. at 520, 528, 544, 560, 572, 580, 604, 624, 636.  During her osteopathic exams, she had spams in her spine, "cervical strain[,]" and "shoulder girdle strain."  Id. at 569; 524, 528, 536, 548, 564, 577, 584, 588, 600, 636.  Dr. Hastings noted that plaintiff had "moderate chronic muscle spasm bilaterally, moderate restriction of movement bilaterally, moderate tenderness bilaterally and Jones tenderpoints [sic] bilaterally.  Muscle tension headache."  Id. at 529, 533, 549, 565, 573, 585, 593, 613, 625, 637.

Overall, medications were helping plaintiff manage the pain, "as well as improve flexibility."  T. at 531, 537, 539, 543, 567, 603, 1087, 1093.  Plaintiff reported no side effects from her medications, except for occasional constipation which was controlled with adjuvant medications.  See id. at 531, 535, 539, 543, 559, 567, 575, 591, 611, 619, 631.  Close to her date last insured, in March 2017, plaintiff's pain was controlled with her medications, which were also "allowing [for] improved functional capacity, though

she has increased neck and headache symptoms over the last two weeks[.]  This has been accompanied by nausea without vomiting."[5]  Id. at 1093.  Plaintiff continued to experience migraine headaches, and tenderness in her spine and shoulders but was in no apparent distress.  See id. at 1094-95.  She had a normal gait, intact motor strength, mostly full range of motion in her spine, and full range of motion with discomfort in her left knee.  See id. at 1098-99.  Plaintiff's nausea and vomiting resolved two weeks later, but "she [] had increased neck and headache symptoms especially looking down.  She has had increased PTSD issues especially in a car, given her six [car accidents].  This is additionally impairing her ability to work and maintain a schedule."  See id. at 1097.

In May 2018, Dr. Hastings wrote a prescription that stated, "[r]emain out of work for this permanent disability sedentary work would only aggravate cervical strain."  T. at 1004.  At the same time, he completed a "verification of Medicaid transportation abilities" form wherein he noted that plaintiff could not use public transportation because she had "unpredictable exacerbations of pain, stiffness of neck and/or headaches that limited her ability to drive herself"; spinal canal stenosis and disc herniations; wore a soft cervical collar; and there was "no surgical option[.]"  Id. at 1006.  Dr. Hastings noted that this request for transportation was "[p]ermanent[.]"  Id. at 1007.  In a 2019 medical questionnaire, Dr. Hastings opined that plaintiff would be off task for more than thirty-three percent of a workday, and would miss more than four days of work per month.  See id. at 1084-85.  Further, her medications caused "sedation/fatigue[.]"  Id. at 1085.  Finally, plaintiff could sit for one- to two-hours a day, would need to change positions

---

[5] It is unclear whether plaintiff experienced vomiting as a symptom of her headaches.  Dr. Hastings noted that plaintiff's headache symptoms had "been accompanied by nausea without vomiting[,]" but further down the page stated, "Vomiting: Headache[,]" and plaintiff testified that she experienced "nausea and vomiting."  T. at 17, 1093.

every twenty- to thirty-minutes, could stand or walk for one- to two-hours a day, and should never lift over ten pounds.  See id.

In May 2019, Lauren Brady, D.C., opined that because of plaintiff's headaches, cervical disc displacement, segmented and somatic dysfunction, and loss of range of movement, she would be off task for more than thirty-three percent of the day.  See T. at 1265.  She also determined that plaintiff could sit for half an hour to one hour, would need to change positions every twenty minutes, could stand or walk for approximately half an hour, and could never lift over ten pounds.  See id. at 1266.

In forming plaintiff's RFC, the ALJ occasionally referenced Dr. Hastings' treatment record.  The ALJ recounted that plaintiff had a normal mood and was alert and oriented.  See T. at 38 (citing T. at 624, 1094-95).  He also observed that records showed that plaintiff "was in no apparent physical distress, had full upper and lower extremity strength and a normal gait, reflexes, and coordination, despite having complaints of pain in her left knee, shoulders, and neck as well as reported headaches[.]"  Id. at 40 (citing T. at 512-13, 624-25, 636-37, 1094-95, 1098-99).  Moreover, the ALJ noted that "there were no adverse side effects to her prescribed pain medications," "including narcotics at times, and muscle relaxers[.]"  Id. (citing T. at  546, 587, 623, 635).

The ALJ also recounted the opinion of plaintiff's "treating doctor, Yan Liu, M.D." who "assessed temporary disability because the claimant allegedly could only walk 200 feet without stopping because of pain, with an expected recovery date of January 2017[.]"  T. at 41 (citing T. at 748).  The ALJ determined that, "[a]lthough knee pain is noted, the restriction to stopping after 200 feet seems arbitrary and a relatively

conservative assessment given the findings around that time." Id.  With reference to Dr. Hastings' treatment notes, the ALJ explained that Dr. Liu's assessment was "made well before the date last insured and that the claimant improved around the date last insured[.]  These records show full neck flexion and extension and full knee range of motion, but still some neck rotation restrictions and pain in the left knee and neck."  Id. at 42 (citing T. at 635-38, 1093-1100).

The ALJ briefly mentioned Dr. Hastings' 2019 medical assessment as well as his 2018 prescription and transportation request.  See T. at 42 (citing T. at 1004, 1006-1007, 1084-86).[6]  The ALJ explained that he "considered several assessments made over a year after the date last insured" and "[t]hese are all give[n] little weight to the extent that they purport to relate to the relevant period . . . ."  Id. at 42.  The ALJ determined that the "assessments" "find little to no support in the treatment and examination notes in closest proximity to, and on both sides of, the date last insured . . . by Kevin Hastings, D.O., who gave most of these opinions[.]"  Id.  Additionally, "form reports, in which a source's obligation is to fill in a blank or check off a box, are entitled to little weight in the adjudicative process."  Id.[7]

Following the ALJ's adverse decision, plaintiff submitted Dr. Hastings' deposition testimony where he reiterated plaintiff's diagnoses and symptoms: she had cervical disc disease of C5-6 and C6-7 with a bulging disc and left C6 foraminal stenosis, left knee osteoarthritis with popliteal cysts, severe compensatory headaches and spasms,

---

[6] In expressing the weight he afforded to Dr. Hastings' opinions, the ALJ referenced document 17F.  See T. at 42.  Document 17F is not a medical opinion but is plaintiff's function report.  See id. at 1009-18.
[7] Plaintiff contends that the ALJ's statement regarding form reports "appears to be referencing a different medical opinion and not that of Dr. Hastings."  Dkt. No. 11 at 18.  However, Dr. Hastings and Dr. Brady filled out identical medical questionnaires, and the ALJ considered and discounted them in the same paragraph of his decision.  See T. at 42.  Therefore, the Court will discuss the use of a form report in analyzing the ALJ's reasoning.

shoulder girdle, cervical chronic spasm, and sleep disturbance.  <u>See</u> T. at 12.  He explained that plaintiff "has palpable spasm[s], tightness, which is common around unstable joints such as the cervical degeneration.  The muscles do extra work trying to stabilize."  <u>Id.</u> at 13.  Dr. Hastings testified that plaintiff's "cervical disc disease produces very marked limitations in range of motion and of course she has the – the spasm compensating for that . . . [and] . . . the left C6 neuroforaminal stenosis which will affect the – with radicular symptoms down the hand, particularly the left hand, into the index finger and thumb."  <u>Id.</u> at 14-15.  Dr. Hastings stated that plaintiff experiences muscle tension headaches because of her impairments.  <u>See id.</u> at 15.  Moreover, he "think[s] she'd be off task quite a bit[]" and "definitely [miss] more than the four days a month."  <u>Id.</u> at 16-17.  Dr. Hastings explained that "sedentary work involves posturing with the head and neck.  And actuation of the shoulder girdles for the most part, if you're talking desktop, or most of those tasks, that repetitive motion is going to cause quite a bit of spasm and headache as well."  <u>Id.</u> at 16.  Finally, Dr. Hastings recounted that toward the end of the relevant period, plaintiff reported high pain levels, her physical functioning and mood were worse as a result of her headaches and vomiting, and her overall conditions remained the same.  <u>See id.</u> at 17-19.

The Appeals Council denied plaintiff's request for review, stating that it "found no reason under our rules to review the Administrative Law Judge's decision."  T. at 1.  The Appeals Council found that Dr. Hastings' deposition "d[id] not show a reasonable probability that it would change the outcome of the decision."  <u>Id.</u> at 2.

### B. The Court's Consideration of Dr. Hastings' Deposition

The Commissioner contends that Dr. Hastings' "deposition is fair game when determining whether the ALJ provided valid reasons for rejecting Dr. Hastings' original opinion," and that although the Court generally cannot consider post hoc rationalizations, they are permitted in this context because the Court must decide whether Dr. Hastings' deposition alters the ALJ's decision.  Dkt. No. 14 at 14, 15-16. The Commissioner argues that Dr. Hastings' deposition testimony is inconsistent with the record for reasons the ALJ did not articulate, and concludes that "between the ALJ's stated rationale and Dr. Hastings' deposition, this record contains more than substantial evidence justifying the ALJ's decision to reject Dr. Hastings' opinion." Id. at 19.[8] Plaintiff argues that the Court cannot consider the Commissioner's post-hoc rationalizations, and the issue "is whether, even considering the new evidence, the ALJ's decision to deny benefits is supported by substantial evidence and complies with the applicable law."  Dkt. No. 15-1 at 3.

"This Court simply cannot, and will not, re-weigh the medical evidence and/or create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself."  Michael S. v. Saul, No. 3:18-CV-0443 (TWD), 2019 WL 4038532, at *6 (N.D.N.Y. Aug. 27, 2019) (citations and internal quotation marks omitted).  Rather, the Court will "review the entire administrative record, which includes the new evidence, and determine, as in every case, whether there is substantial evidence to support the decision of the Secretary." Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996); see also Ahearn v. Astrue, No. 1:08-CV-

---

[8] In arguing that the prohibition on considering post-hoc rationalizations should not apply in this context, the Commissioner acknowledges that "[t]he Court obviously can't rule in the Commissioner's favor on this issue[.]"  Dkt. No. 14 at 15, n.9.

951 (GLS/VEB), 2010 WL 653712, at *4 (N.D.N.Y. Feb. 22, 2010) ("[T]he additional

evidence becomes part of the administrative record reviewed by the district court.").

This is because although

> [w]hen an Appeals Council simply denies review . . . the focus for a
> reviewing court is upon the ALJ's decision, which represents the final
> determination of the agency, . . . a reviewing court must consider the
> entire record, including new evidence submitted to the Appeals Council, to
> determine whether the ALJ's findings are supported by substantial
> evidence.

Jessica W. v. Saul, No. 5:19-CV-1427 (DEP), 2021 WL 797069, at *8 (N.D.N.Y. Mar. 2,

2021) (citing 20 C.F.R. § 416.1481; Perez, 77 F.3d at 46)).

### C. Treating Physician Rule

For claims filed before March 27, 2017, "the opinion of a claimant's treating

physician as to the nature and severity of the impairment is given 'controlling weight' so

long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic

techniques and is not inconsistent with the other substantial evidence in the case

record." Greek v. Colvin, 802 F.3d 370, 375 (2d Cir. 2015) (citations omitted); see also

Halloran, 362 F.3d at 31.  "[W]hen a treating source's opinion contradicts other

substantial evidence in the record, such as the opinions of other medical experts, an

ALJ may afford it less than controlling weight." Samantha S. v. Comm'r of Soc. Sec.,

385 F. Supp. 3d 174, 184 (N.D.N.Y. 2019).  If an ALJ gives a treating physician's

opinion less than controlling weight, he or she must consider various factors in

determining how much weight, if any, to give the opinion, including: (1) the length of the

treatment relationship and the frequency of examination; (2) the nature and extent of the

treatment relationship; (3) what evidence supports the treating physician's report; (4) the

consistency of the treating physician's opinion with the record as a whole; (5) the area

of specialization of the physician in contrast to the condition being treated; and (6) any other factors which may be significant in the claimant's case.  See 20 C.F.R. §§ 404.1527(c), 416.927(c).  "[A]n ALJ need not mechanically recite these factors as long as the record reflects a proper application of the substance of the rule."  Samantha S., 385 F. Supp. 3d at 184; see also David E. v. Saul, No. 5:20-CV-466 (DJS), 2021 WL 1439668, at *4 (N.D.N.Y. Apr. 16, 2021) (citations and quotation marks omitted) ("Where the ALJ's reasoning and adherence to the regulation is clear, and it is obvious that the substance of the treating physician rule was not traversed, no slavish recitation of each and every factor of 20 C.F.R. §§ 416.927 & 404.1527(c) is required.").

### 1. Overwhelmingly Compelling Standard

Plaintiff contends that "[a]n ALJ may not reject undisputed medical opinion evidence absent either: (i) a contrary medical opinion; or (ii) an overwhelmingly compelling circumstantial analysis."  Dkt. No. 11 at 12; 13-16.  The Commissioner argues that (1) the "overwhelmingly compelling" standard should not apply to Social Security appeals in general; (2) even if it applies to Social Security cases generally, it is not applicable here; and (3) even if applicable, "this record contains overwhelmingly compelling reasons that justify rejecting the limitations in Dr. Hastings's opinion."  Dkt. No. 14 at 21; 20.

"[T]he ALJ is merely a fact-finder and, as such, has no ability to disregard a medical opinion without a contrary medical opinion or an overwhelmingly compelling circumstantial critique."  Amy C. v. Comm'r of Soc. Sec., No. 3:20-CV-0546 (ML), 2021 WL 1758764, at *8 (N.D.N.Y. May 4, 2021) (quoting Wagner, 906 F.2d at 861).  "[T]he ALJ cannot arbitrarily substitute his own judgment for competent medical opinion."

Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999)) (citation omitted).  "A circumstantial critique by non-physicians, however thorough or responsible, must be overwhelmingly compelling in order to overcome a medical opinion."  Amy C., 2021 WL 1758764, at *9 (citation omitted).  As recently as March 2020, the Second Circuit reiterated application of this standard.  See Riccobono v. Saul, 796 F. App'x 49, 50 (2d Cir. 2020) (summary order) ("And while the ALJ may have given appropriate reasons for not according controlling weight to some of the opinions of [the plaintiff's] treating physicians, she must still base her conclusion on some medical opinion or otherwise articulate the overwhelmingly compelling reasons for not doing so.").  As the Second Circuit has not abrogated the standard, this Court will continue to apply it.  See, e.g., Travis L. v. Saul, No. 3:19-CV-663 (CFH), 2021 WL 2580101, at *6 (N.D.N.Y. June 23, 2021) ("[T]o the extent the Commissioner seeks to contend that the overwhelmingly compelling standard has been abrogated by the Second Circuit, the Court declines to find that his positions were substantially justified as the undersigned cannot conclusively conclude that this standard has indeed been abrogated."); Heather U. v. Comm'r, No. 3:19-CV-01320 (DEP), Dkt. No. 21 at 15-17 (N.D.N.Y. Mar. 10, 2021) ("I appreciate that the Commissioner has asked that the Court determine that the overwhelmingly compelling standard has been abrogated and, if not, it should be.  That's a matter for the Second Circuit Court of Appeals . . . .").

## 2. Application

The ALJ's single-paragraph explanation regarding Dr. Hastings' opinion runs afoul of the treating physician rule.  See, e.g., Ashley v. Comm'r of Soc. Sec., No. 5:14-CV-00040 (TJM), 2014 WL 7409594, at *3 (N.D.N.Y. Dec. 30, 2014) ("The ALJ's single,

short and conclusory paragraph fails to clearly identify any significant deficits with [plaintiff's treating physician's] opinion or to address the required factors set forth by 20 C.F.R. § 404.1527(c) (1)-(6).").  The ALJ did not acknowledge Dr. Hastings' treating relationship or extensive treatment record.  See T. at 42; see also 20 C.F.R. § 404.1527(c)(1)-(2) (requiring consideration of the examining and treatment relationship).  This is concerning as Dr. Hastings and plaintiff have a significant treatment history: Dr. Hastings saw plaintiff approximately two- to three-times a month from January 2016 to May 2019.  See T. at 510-638, 1087-1264; see generally David E., 2021 WL 1439668, at *4 ("The Court does not find that the ALJ's brief discussion of [the] [p]laintiff's activities of daily living constitutes sufficiently 'good reasons' for assigning reduced weight to the opinion" given that the physician "saw [the] [p]laintiff weekly or bi-weekly from September of 2012 through the date of the opinion, which was signed in April and May of 2017.") (citing Ferraro v. Saul, 806 F. App'x. 13, 15 (2d Cir. 2020) (summary order)).

As to the supportability and consistency factors, the ALJ discounted Dr. Hastings' opinion because there was "little to no support in the treatment and examination notes[,]" and it was expressed in a "form report" which is "entitled to little weight in the adjudicative process."  T. at 42.  It is true that form reports are generally afforded less weight because they do not provide narrative explanations for the opined limitations. See Nikki L. v. Saul, No. 3:20-CV-934 (ATB), 2021 WL 4066530, at *5 (N.D.N.Y. Sept. 7, 2021) ("At the outset, the court agrees that [the check-box form] opinion lacked sufficient explanation supporting the restrictive limitations contained therein."); see also Mix v. Astrue, No. 09-CV-0016 (MAT), 2010 WL 2545775, at *5 (W.D.N.Y. June 18,

2010) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best.") (citation omitted).  However, the Court must consider Dr. Hastings' deposition in determining whether substantial evidence supports the ALJ's decision.  See Ahearn, 2010 WL 653712, at *4; see also Perez, 77 F.3d at 47 (reviewing new evidence submitted to Appeals Council, determining it did not contradict ALJ's finding, and thus, concluding ALJ's determination was based on substantial evidence).

In his deposition, Dr. Hastings explained plaintiff's diagnoses and that she has severe pain, spasms, "radicular symptoms down the hand, particularly the left hand, into the index finger and thumb[,]" and muscle tension headaches.  T. at 12-15.  Moreover, he explained his reasons for opining that plaintiff would be off task for more than thirty-three percent of the day and miss more than four days per month: "[t]he thing is [] sedentary work involves posturing with the head and neck.  And actuation of the shoulder girdles for the most part, if you're talking desktop, or most of those tasks, that repetitive motion is going to cause quite a bit of spasm and headache as well."  Id. at 16, 1084-85.  The ALJ did not address any aspect of Dr. Hastings' medical source statement related to the various limitations, such as time off task, absenteeism, an inability to sit or stand for more than two hours, etc., but summarily stated that the entire assessment "find[s] little or no support in the" record.  Id. at 42; see Raymond M. v. Comm'r of Soc. Sec., No. 5:19-CV-1313 (ATB), 2021 WL 706645, at *8 (N.D.N.Y. Feb. 22, 2021) (finding error where "[t]he ALJ provided no substantive explanation for her conclusion that [an] opinion was persuasive[.]"); cf. Michael C. v. Saul, No. 3:18-CV-0386 (CFH), 2019 WL 3776155, at *8 (N.D.N.Y. Aug. 12, 2019) ("[T]he ALJ provided

18

sufficient analysis of Dr. Hastings' opinions and of the evidence, ultimately finding

further limitations regarding off-task time and absenteeism were not warranted.").

Moreover, the Commissioner does not identify anything in the record that contradicts Dr.

Hastings' conclusions.  See, e.g., Lesterhuis v. Colvin, 805 F.3d 83, 87 (2d Cir. 2015)

("The record [] does not include any contrary 'substantial evidence' that would support

the ALJ's conclusion regarding disability based on the number of work days that [the

plaintiff] would miss per month.").  In light of Dr. Hastings' deposition, the ALJ's

expressed rationale discounting Dr. Hastings' medical source statement because it was

a form report does not constitute substantial evidence in support of the ALJ's decision to

give Dr. Hastings' opinions "little weight[.]"  T. at 42; see Schaal v. Apfel, 134 F.3d 496,

503, 505 (2d Cir. 1998) (explaining that the ALJ erred in assigning no weight to the

plaintiff's treating physician where the ALJ "concluded that the questionnaire . . .

lack[ed] [] clinical findings to support these conclusions[]" but "even if the clinical

findings were inadequate, it was the ALJ's duty to seek additional information from [the

physician] sua sponte[] . . . [and] plaintiff did provide such additional medical evidence,

in the form of [the physician's] treatment notes, to the Appeals Council.").

The ALJ also had before him Dr. Brady's form report opinion that reached nearly

identical limitations as Dr. Hastings, including that plaintiff would be off task for more

than thirty-three percent of a workday.  See T. at 1265.  The ALJ discounted Dr. Brady's

opinion because it was a form report and because "the claimant noted that the

limitations on this recent form report appeared to represent an exaggeration of her

limitations, particularly in terms of her ability to stand, sit and walk[.]"  Id. at 42.  The ALJ

made no determination as to whether the finding on plaintiff's ability to remain on task or

attend work was supported by the record despite both Dr. Hastings and Dr. Brady

reaching identical off-task limitations.  See Lesterhuis, 805 F.3d at 87 ("[T]he ALJ had

before him one other piece of evidence that supported [the treating physician's]

conclusion: the opinion of the non-doctor therapist . . . who concluded that [the plaintiff]

would miss more than four days of work per month.").  During plaintiff's hearing, she

explained that could stand for "[t]hirty minutes maybe a little bit more[]" before needing

to stop.  T. at 67.  She also explained that she has "an alarm on my phone every hour

that says, hey, if you're still doing the same thing whether you're just sitting still, or

moving, try changing."  Id. at 71.  The ALJ read Dr. Brady's opinion on the record, "it

says patient could have sat for approximately, and she filled in one-half to one hour out

of an eight-hour day.  Would you say that['s] an exaggeration?"  Id. at 85.  Plaintiff

responded, "I think that speaks to work as an exaggeration.  It sounds incorrect.  It

sounds like it's a more than just sitting in a chair; it's sitting doing, I think, maybe, and

obviously I don't – I'm not in their head.  But it does – it does seem off to me as well.  I

think it's more how long could you do it without interruption . . . ."  Id.  The ALJ also

inquired, "[n]ext one – says combined standing and walking in an eight-hour workday

was not more than one-half-hour.  Does that sound like that also was an exaggeration?"

and plaintiff responded, "[y]eah, I don't understand that."  Id.  The ALJ did not ask about

plaintiff's ability to remain on task or about Dr. Hastings' and Dr. Brady's identical

opinions related to it.  See id.  As such, the ALJ's basis for rejecting Dr. Brady's

opinion—that it exaggerated plaintiff's limitations—does not apply to the time off task

limitation, and therefore, "does not provide substantial evidence to call into question Dr.

[Hastings'] opinion[]" regarding time off task and absenteeism.  Lesterhuis, 805 F.3d at

88; see T. at 42, 1084-85, 1265.  Importantly, the vocational expert testified that employers will tolerate an employee being off task for ten percent of a day and missing only one day per month; thus, if the ALJ had afforded controlling weight to Dr. Hastings' opinion, plaintiff would likely be precluded from work.  See T. at 93-94.

The ALJ stated that there is "little or no support" for Dr. Hastings' opinion "in the treatment and examination notes in the closest proximity to, and on both sides of, the date last insured[.]"  T. at 42.  Dr. Hastings' opinion is supported by Dr. Brady's opinion, plaintiff's testimony, and Dr. Hastings' deposition testimony and treatment notes reflecting that plaintiff had range of motion limitations in her neck and spine; tenderness across her neck, spine, and shoulders; muscle tension headaches; spams in her spine; and high pain levels.  See id. at 15-18, 67, 71, 510-638, 1265-67.  The ALJ did not identify what records contradict which of Dr. Hastings' opined limitations and it is not evident upon review.  See id. at 42; cf. Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002) ("While the opinions of a treating physician deserve special respect, . . . they need not be given controlling weight where they are contradicted by other substantial evidence in the record[.]").

Without explanation, the ALJ cited to ten pages out of hundreds of pages of treatment records as evidence that Dr. Hastings' medical source statement was unsupported by the record.  See T. at 42; compare Michael C. v. Saul, No. 3:18-CV-0386 (CFH), 2019 WL 3776155, at *7 (N.D.N.Y. Aug. 12, 2019) (explaining that the treating physician rule was not traversed where "the ALJ provided sufficient and specific reasons" for discounting the treating physician's various opinions.).  The records the ALJ cited indicate that on March 7, 2017, plaintiff's physical function and overall

functions were better, that her pain was an average of six out of ten throughout the prior week, that her osteopathic exam showed mixed muscle tension and migraine headache, cervical strain, thoracic somatic dysfunction and strain, and shoulder girdle strain.  See T. at 635-38.  Then on March 28, 2017, plaintiff "had increased neck and headache symptoms over the last two weeks.  This has been accompanied by nausea without vomiting."  Id. at 1093.  Her physical functioning was "worse" but her overall functions were the "same" and had similar results from the osteopathic exam.  Id.; 1094-96.  Finally, the ALJ cited to records from April 11, 2017, that indicated that plaintiff had "increased neck and headache symptoms especially looking down.  She has had increasing PTSD issues especially in a car, given her six [motor vehicle accidents].  This is additionally impairing her ability to work and maintain a schedule."  Id. at 1097.  Her osteopathic exam showed similar headaches, strain, and dysfunction.  See id. at 1099.  Dr. Hastings recommended that plaintiff "[r]estrict activities to those that produce minimum discomfort."  Id. at 1100.  The ALJ did not explain, and it is not otherwise evident, how these records invalidate Dr. Hastings' opined limitations.  See id. at 42; see Wagner, 906 F.2d at 862 (explaining that the treating physician's "conclusion, as set out in . . . [his] answers to the questionnaire, was not substantially contradicted, and was therefore entitled to deference from the Secretary.").

The Commissioner argues that Dr. Hastings' deposition supports the ALJ's conclusion to reject Dr. Hastings' opinion because the "deposition reveals that he based the opinion, in part, on transitory symptoms that came nowhere close to satisfying the Social Security Act's twelve-month duration requirement . . . [where] [f]or instance, plaintiff's nausea and vomiting had resolved within two weeks."  Dkt. No. 14 at 18.

Although the Commissioner is correct that plaintiff's nausea and vomiting resolved in two weeks, Dr. Hastings' testified that plaintiff's muscle tension headaches, pain, and spasms did not abate.  See T. at 15.  The record indicates that plaintiff continued to have "unpredictable episodic spikes" with her headaches.  Id. at 1120; 15, 1093, 1097.  The ALJ cited to records "on both sides of" plaintiff's date last insured, up to April 11, 2017, but failed to explain how they refute Dr. Hastings' opinion where plaintiff continued to experience severe headaches and pain from her physical impairments.  Id. at 42, 1097-99.  Plaintiff also continued to show symptoms well beyond her date last insured.  For example, in June 2017, plaintiff reported "interval pain relief of about a week . . . though she has chronic recurrence of cervical nerve pain[,]" and in January 2018, plaintiff's "[n]eck stiffness and headaches [had] been worse . . . [and she] [h]ad some increased symptoms . . . while driving."  Id. at 1116, 1176.  Although the relevant period for the ALJ's disability determination is before the plaintiff's date last insured, "medical evidence obtained after a plaintiff's date last insured can be used to show that a plaintiff was disabled prior to her date last insured[]" as long as it pertains to already-existing impairments.  Carter v. Comm'r of Soc. Sec., No. 5:14-CV-1315 (GTS/WBC), 2015 WL 8029511, at *4 (N.D.N.Y. Nov. 12, 2015), report and recommendation adopted, 2015 WL 8180368 (N.D.N.Y. Dec. 7, 2015); see Pollard v. Halter, 377 F.3d 183, 193-94 (2d Cir. 2004).  It is unclear whether the ALJ considered the multitude of records beyond April 11, 2017, to determine the severity of plaintiff's symptoms that existed prior to her date last insured, including her muscle spasms, tenderness, headaches, and limited ranges of motion.  Accordingly, because the ALJ did not sufficiently address the relevant factors under 20 C.F.R. § 404.1527(c)(1)-(6) or provide

good reasons for discounting Dr. Hastings' opinion, "and a searching review of the record does not assure the Court that the substance of the treating physician rule was not traversed[,]" remand is warranted on this ground.  David E., 2021 WL 1439668, at *4.[9]

## VI. Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby:

**ORDERED**, that plaintiff's Motion for Judgment on the Pleadings, Dkt. No. 11, is **GRANTED**; and it is further

**ORDERED**, that defendant's Cross-Motion for Judgment on the Pleadings, Dkt. No. 14, is **DENIED**, and the matter is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g), to the Commissioner.

**IT IS SO ORDERED.**

Dated: February 15, 2022
     Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

---

[9] As remand is required, the Court does not reach plaintiff's remaining arguments. See Dkt. No. 11 at 20-22; see, e.g., Jonathan V. v. Comm'r of Soc. Sec., No. 6:18-CV-1350 (TWD), 2020 WL 1270655, at *5 (N.D.N.Y. Mar. 17, 2020) (declining to reach remaining arguments where remand was warranted).  The Court notes plaintiff's argument that, in denying her request for review, the Appeals Council was required to provide "good reasons" "for not crediting Dr. Hasting[s'] opinion." Dkt. No. 11 at 20.  The Commissioner argues that the Appeals Council is not required to give any reasons for a denial of review, and relies on Jessica W. v. Saul, No. 5:19-CV-1427 (DEP), 2021 WL 797069, at *7 (N.D.N.Y. Mar. 2, 2021).  See Dkt. No. 14 at 4-11.  The Court acknowledges Magistrate Judge Peebles' conclusion that the cases that have held that the Appeals Council must provide good reasons for rejecting a treating physician's opinion appear based on a misreading of the caselaw.  See Jessica W., 2021 WL 797069, at *8 (noting that Shrack v. Astrue, 608 F. Supp. 2d 297, 302 (D. Conn. 2009) relies on Snell v. Apfel, 177 F.3d 128, 129-30 (2d Cir. 1999) and in Snell, the Appeals Council accepted review of the ALJ's decision and "addressed the merits of the matter[.]").).  The Court further recognizes that the Second Circuit has declined to address explicitly whether the treating physician rule applies to the Appeals Council's denial of review.  See Lesterhuis v. Colvin, 805 F.3d 83, 87 (2d Cir. 2015) (per curiam); see also Newbury v. Astrue, 321 F. App'x 16 (2d Cir. 2009) (summary order).